UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 21-10289-FDS<br>THOMAS DAVIS, )<br>)<br>Defendant )<br>) | |

**MEMORANDUM AND ORDER ON DETENTION**

**April 15, 2022**

Hennessy, M.J.

      Thomas Davis is charged by indictment with Possession of Child Pornography and Receipt of Child Pornography.  On March 15, 2022, he filed a proposed release plan that includes residing in a sober home in Boston, agreeing to not possess or access an internet-capable device, and having no contact with minors with the exception of his daughters.  [Dkt. No. 41].  The United States has moved for detention and opposes release on the proposed conditions.  [Dkt. No. 42].  The Court held a hearing on March 29, 2022.  [Dkt. No. 46].  For the reasons stated in this Memorandum, I grant the Government's motion to detain Davis on grounds of dangerousness.

      **I.**    **CHARGES AND EVIDENCE**

      According to the August 26, 2021 affidavit filed in support of the criminal complaint, in or about early July 2021, a person reported to FBI agents that Davis had displayed to him a video showing Davis having sexual intercourse with an unknown individual who appeared to be middle school-aged.  [Dkt. 1-1, ¶t4].  Davis told the reporting person that Davis was a teacher, and the individual was his student.  [Id.].  Agents confirmed that Davis was a teacher at

1

Foxborough High School.  [Id.].  On August 25, 2021, agents obtained a warrant to search Davis' residence in Mansfield for evidence of possession of child pornography.  [Id.].  The following day at 6:30 a.m., agents executed the warrant.  [Id. ¶5].  Davis was the only person present.  [Id.].  Davis signed a Miranda waiver and told agents that his computer contained child pornography which he downloaded using an app called "Telegram."  [Id. ¶¶6-7].  Davis denied ever inappropriately touching a child.  [Id. ¶7].

During an on-site examination of Davis' laptop, agents found approximately 40 images of child pornography; the details of three such images are set forth in the complaint affidavit.  [Id. ¶8].  On Davis' iPhone, agents located what appeared to be the video that was the subject of the original report.  [Id. ¶9]. The approximately 20-minute video depicts Davis and a male who appears to be a teenager engaged in intercourse and oral sex.  [Id.]  Davis admitted that he was depicted in the video and that the male was 18 and they had met on a dating application.  [Id.].[1]

## II.     THE PRETRIAL SERVICES REPORT

Davis is 41 and was born in Kansas, where his father and stepmother still reside.  He has two siblings who reside in Kansas and Georgia.  Davis went to college in Ohio, returned to Kansas for a couple of years, lived in New York for one year and has resided in Massachusetts since 2004.  Davis is married but has been separated from his husband since 2019.  He has two daughters from a prior marriage.  His daughters reside with their mother in Bridgewater and Davis is court-ordered to pay $150 per month in support.

Davis has a bachelor's degree from Bridgewater State College and requires three credits more for a master's degree in special education.  For the four years prior to his arrest, Davis was a special education and after-school teacher at Foxborough High School.  For three years prior to

---

[1] Based on information Davis provided and follow-up investigation, the young male was neither a minor nor Davis' student.

his arrest, he also worked part-time as a bartender at a restaurant. Since 2011, he has also worked as an acting coach.

Since his divorce, Davis has suffered from and sought therapy for depression and anxiety. He also takes prescription medication for these issues. For nine months prior to his arrest, Davis attended marriage counseling with his husband in an effort to rekindle their marriage.

Davis experimented with marijuana at 18 and last used it a week prior to his arrest. At 40, he experimented with GHB and last used it a month prior to his arrest. At 40, Davis also experimented with crystal methamphetamine, and thereafter used it weekly, last ingesting it a week prior to his arrest.

### III.  THE MOTION FOR DETENTION

At the August 26, 2021 initial appearance, the Government moved for detention on grounds of dangerousness and risk of flight. [Dkt. No. 6]. The Government noted the charge of Receipt of Child Pornography triggered a rebuttable presumption that no condition or combinations of conditions would reasonably assure Davis' appearance as required and the safety of any other person or the community. See 18 U.S.C. § 3142(e) (3) (E).

**A.  Davis' Release Proposals**

Davis originally proposed that he would reside with his father and stepmother in Kansas. In this regard his parents had written to the Court attesting to their willingness to provide a residence for Davis, serve as third-party custodians, and password-protect electronic devices. However, before the detention hearing, PTS reported that residing with his parents was no longer available. Davis assented to a voluntary order of detention without prejudice. [Dkt. No. 11].

In December, Davis proposed that he be released to a sober residence in Dorchester. [Dkt. No. 28]. The proposal was supported by representatives from Black and Pink, an

organization that advocates for members of the LGBTQ+ community and provides assistance in securing housing and other supports.  PTS assessed the residence.  The residence was a three-story home that accommodated 12 to 13 men who shared a common space and one of the two-bed bedrooms.  The house manager was uncomfortable requiring that residents password-protect or otherwise remove internet-capable devices.  As such, Probation determined it would not be able to monitor whether Davis had incidental access to the internet.  At the December 17, 2021 hearing, the Court denied release on the proposed conditions without prejudice to propose an appropriate residence where internet access could be monitored.  [Dkt. No. 32].

On March 15, 2022, Davis proposed release to a different sober house in Boston which had accommodations similar to the earlier proposal.  [Dkt. No. 41].  The plan was again supported by Black and Pink.  In this case, the house manager agreed to instruct residents to not share passwords with Davis but conceded he could not monitor compliance with such directive. PTS reported that there were no controls that could restrict Davis' access to internet capable devices.  Further, there was a requirement that residents work (and hence work might present Davis with an opportunity to access the internet through work devices).  It was also proposed that Davis would, under Black and Pink's supervision, engage in teletherapy.

     **B.**    **The Bail Reform Act of 1984**

A judicial officer may order a defendant detained pending trial if the United States establishes (1) by clear and convincing evidence that a defendant is a danger to the community, or (2) by a preponderance of the evidence that a defendant poses a serious risk of flight.  18 U.S.C. § 3142(f); see United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986), cert. denied, 479 U.S. 978 (1986).  The judicial officer may then detain a person pending trial only if the judicial officer determines

that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

In making this determination the judicial officer must consider the following factors:

(1)  the nature and circumstances of the offense charged, including whether the offense ... involves ... a minor victim;

(2)  the weight of the evidence against the person;

(3)  the history and characteristics of the person, including:

(A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,

(B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

Where, as here, a person is indicted for certain offenses involving a minor victim, a rebuttable presumption attaches that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. See United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988). Once the presumption attaches, a burden to produce "some [relevant] evidence" shifts to a defendant. United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). A defendant's introduction of some relevant evidence does not eliminate the presumption entirely. See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). Rather, the presumption remains in the case for consideration by the judicial officer. See

Jessup, 757 F.2d at 383.  The ultimate burden of persuasion remains with the United States.  Id. at 381.  Here, I find that Davis has rebutted the presumption.

**C.  Discussion**

Applying the factors set forth in Section 3142(g) and the rebuttable presumption, I find that the Government has failed to carry its burden of establishing by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure Davis' appearance as required.  Davis has significant ties to Massachusetts, including a husband, two daughters, an ex-wife, and work history.  He has lived here since 2004.  While Davis has presumably been terminated from his teaching position, he has other work history and skills, including bartending.  He has no criminal history.  Davis is college-educated and close to earning a master's degree.  I believe the conditions that have been proposed would reasonably assure his appearance as required.

I reach a different conclusion on the question of danger since nearly all the factors, coupled with the modest weight of the rebutted presumption, support a finding by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

The first factor, the nature and circumstances of the offenses charged, is central to this determination.  Congress expressly directed the court to consider whether the offense involved a minor victim.  While the Government has not been given an opportunity for a robust presentation of its evidence, the complaint affidavit establishes that Davis received and possessed some 40 images of child pornography.  As the Government has argued and as will become relevant in another factor, a child is victimized each time an image is viewed.  Aggravating the nature of the offense are the circumstances.  Davis is a secondary school teacher who spends his workday with

minors. It seems clear from the video Davis made, possessed and shared with the reporting person that Davis fantasizes about sex with minors: Davis told the reporting person that the young man in the video was one of his students. Thus, the circumstances of the offense show that Davis deliberately put himself in a position that has the potential to harm minors. To be sure, it is difficult to gauge how a person will behave on release. But the nature and circumstances of this offense do not give the Court confidence in Davis' promise that he would not incidentally access the internet or otherwise access child pornography.

      The weight of the evidence is compelling if not overwhelming and supports detention. Agents recovered child pornography on Davis' laptop computer, and Davis admitted to downloading it. Short of a successful motion to suppress his mirandized statements or the search warrant, the evidence of Davis' criminal conduct suggests dangerousness, especially given the ubiquity of the internet and the ease of access to it.

      Davis' history and characteristics present a mixed factor. One on hand, Davis is a father with two daughters. He has studied and works in special education. Thus, he possesses a background which would make him empathetic to children and their vulnerabilities, and would argue that, if released, Davis would not want to engage in conduct harmful to children. On the other hand, Davis' sexual attraction to children seems beyond his will to manage. He downloaded and possessed child pornography, actions which constitute crimes. He made a video of himself and another young man—not a minor—engaged in sex. He apparently used this video to fuel sex with the reporting person. In sum, his actions reflect the subordination of concern for minors to his sexual needs. In such circumstances, I think the danger posed by release is clear and convincing. Added to this is a concerning substance use history that may feed self-interested conduct. Most of it is of recent vintage, and, to the credit of his attorney, Davis' release package

expressly seeks to address substance use through drug-testing, therapy and residence in sober housing. But recent drug use raises an enhanced concern for the safety of others.

Davis has no criminal history and at the time of the offense was not on release, probation or parole.

Finally, if released, Davis poses an unacceptable danger to the community, and this is where the rubber really hits the road. Children are victimized each time an image of child pornography is downloaded or viewed. Given Davis' history, alleged conduct, and proclivities, I cannot accept a release package that does not in some way monitor Davis' internet access. While I do not wish to set an impossible standard, more is required than Davis' promise that he will not access the internet, given the ubiquity of the internet and its easy access. In the circumstances of this case, these are obstacles to reasonably assuring the safety of children.

### IV. CONCLUSION

Crimes against children raise challenges for release that will reasonably ensure the safety of minors. This is consistent with the rebuttable presumption that applies in such cases. For all the foregoing reasons, I find that Davis has not presented a condition or combination of conditions that will reasonably assure the safety of any other person or the community. Accordingly, I grant the United States' motion to detain Davis.

**Davis is advised of his right under Section 3145(b) to seek review of this Order.**

                                          / s / David H. Hennessy
                                          David H. Hennessy
                                          United States Magistrate Judge